Topaz Solar Project (Project)
Memorandum of Understanding (MOU)
between
CSI Electrical Contractors (CSI)
and
IBEW Local Union 639 (LU 639)

CSI requires that all employees working on the Project wear hard toe work boots as defined by ANSI Standard Z41. California OSHA requires that the employer is responsible to purchase any and all safety equipment that is required by the company while working on the jobsite.

Accordingly, this MOU is written to define the agreement between CSI and IBEW Local Union 639 regarding reimbursement to employees for hard toe shoes they purchase to work on the Project site.

Employees will be eligible to receive reimbursement of up to $150.00 for the purchase of hard toe work boots in accordance with the rules set out below:

- The total reimbursement will be equal to the amount of the purchase, including sales tax, up to $150.00, with the original receipt of purchase.
- Reimbursement will be paid to qualified employees as non-taxable income on the regular pay check after the completion of 80 paid work hours.
- Employees will be eligible for this benefit once for the life of the Project, regardless of how many times they are employed on the Project.
- This agreement covers only CSI employees.
- Employees laid off in a reduction in force before the 80 paid work hours will qualify for this reimbursement.
- Employees who voluntarily resign their position or are terminated for cause will not be eligible for this reimbursement if within the first 80 paid work hours.
- Should employees be hired for one or two day assignments, they will be issued metatarsal protectors and/or concrete boots or other specialty protective boots for the duration of their employment,

Agreed:

_Any 14, 2012_
Date

_IBEW Local Union 639_

_CSI Electrical Contractors_

*MOU*

# TOPAZ SOLAR FARM
# WORK SITE AGREEMENT

## 1. INITIAL PROVISIONS

1.1.   This Work Site Agreement ("Agreement") is entered into by First Solar Electric (California), Inc. ("EPC"), and IBEW Local Union 639 ("the Union").

1.2.   The Topaz Solar Farm Project (the "Project") is an approximately 550 MW solar photovoltaic power plant located in San Luis Obispo County, California The project site is located on both sides of Highway 58, in between the intersection of Highway 58 and Bitterwater Road and just west of the intersection of Highway 58 and Soda Lake Road in San Luis Obispo County, California. This location is known as the "Project Site". The Project is owned by Topaz Solar Farms, LLC ("Owner"). It is understood and agreed by and between the Parties to this Agreement that the final plans for the Project may be subject to modifications and approval by those public agencies possessing lawful approval authority over the Project and that this Agreement applies to the Project as it is finally approved by such entities and agencies. Once a final physical address is secured for this Project Site, it will be incorporated into this Agreement.

1.3.   First Solar Electric (California), Inc. is an indirect wholly owned subsidiary of First Solar Inc, and serves as the California Engineering, Procurement and Construction arm of First Solar Inc. and is responsible for the construction of the Project.  EPC is a contractor primarily engaged in the construction industry.

1.4.   As provided below, all persons or entities assigning, awarding or subcontracting Covered Work (as defined in Article 2), or authorizing another party to assign, award or subcontract Covered Work, or performing Covered Work (and all of whom are individually and collectively referred to as "Employer" or "Employers") will (except for the EPC) become subject to this Agreement by executing Attachment A (the "Agreement To Be Bound").

1.5.   The Union is a labor organization whose members are construction industry employees who generally work in close proximity to one another at construction job sites and whose jobs are closely related and coordinated.  The Union is a party to a multi-employer collective bargaining agreement ("Master Agreement") that covers the geographic area of the Project.  Where the term Master Agreement is used, it means the existing Master Agreement in effect on the date hereof.

1.6.   A large labor pool represented by the Union will be required to execute the work involved in the Project.  EPC and Employers wish, and it is the purpose of this Agreement to ensure, that a sufficient supply of skilled craft workers are

CSI 0022

available at the Project, that all construction work and related work performed by the members of the Union on this Project proceed continuously, without interruption, in a safe and efficient manner, economically with due consideration for the protection of labor standards, wages and working conditions. The parties also expressly recognize that the Project is located in a desert region that is subject to high temperatures. Employers will provide a safe work site and comply with all state and federal requirements related to protection from heat. The Union will not seek to restrict productivity based on the desert location. In furtherance of these purposes and to secure optimum productivity, harmonious relations between the parties and the orderly performance of the work, the parties to this Agreement agree to establish adequate and fair wage levels and working conditions.

1.7.   It is a central purpose of this Agreement that all Covered Work be performed by workers who are Union members. In recognition that there may be job site friction if unionized employees work alongside non-unionized employees on non-Covered Work on a common situs, the Union pledges to promote the harmony of the work force, to cooperate with Employers to encourage their members to do the same. In furtherance of this labor harmony, the Union and the Employers agree that there shall be no strikes, picketing or other concerted activity on the worksite or related to the Project for any reason whatsoever. The Unions further agree that the Employers and/or EPC may impose severe penalties on any Union that violates this prohibition in accordance with Section 6.1. An Employer may remove any employee for violating this prohibition, and any such employee will not be eligible thereafter for referral under this Agreement for the duration of the Project.

1.8.   In the interest of the future of the construction industry in the local area, of which the Union is a vital part, and to maintain the most efficient and competitive posture possible, the Unions pledges to work and cooperate with EPC and the Employers to produce the most efficient utilization of labor and equipment in accordance with this Agreement. In particular, the Unions shall make all efforts to first source labor local to the Project Site. In addition, the Union shall not afford preferential status to other jobs in the jurisdiction, to the extent such preference will inhibit the availability of qualified workers for the Project.

## 2. SCOPE OF AGREEMENT

2.1.   This Agreement covers the following on-site electrical construction work within the scope of the Union's Master Agreement:  handling of photovoltaic panels or panel cartridges (including any rigging for lifting of cartridges from delivery trucks, guiding cartridges onto support rails and sliding cartridges into final location), installation and connection of any electrical wires and cables, connections to power conversion stations, electrical fixtures, electrical appliances, electrical apparatus, electrical raceways or trays, electrical conduits, electrical

CSI 0023

instrumentation and controls, and electrical startup and testing. All of the foregoing work within the scope of this Agreement is referred to as "Covered Work."

2.1.1   Excluded Work: The following shall not be considered Covered Work:

(a)   The installation of posts, rails and tilt brackets; and,

(b)   The fabrication of power conversion stations.

2.1.2   Excluded Employees: The following individuals are not subject to the provisions of this Agreement:

(a)   Non-Manual employees, including without limitation superintendents, supervisors (excluding general forepersons specifically covered by the Master Agreement), project managers, engineers, surveyors, draftspersons, schedulers, planners, quantity surveyors, procurement and/or material receipt personnel, inspectors and testers (including commissioning and testing personnel of EPC), quality control/assurance personnel, timekeepers, mail carriers, clerks, office workers, messengers, janitors, guards, technicians, and all professional, engineering, administrative, management and non-manual persons;

(b)   Employees and entities engaged in off-site manufacture, modifications, repair, maintenance, assembly, painting, handling or fabrication of components, materials, modules, power conversion stations, equipment or machinery or involved in deliveries to and from the Project Site;

(c)   Employees of any Employer or construction manager, except those performing manual, Covered Work covered by this Agreement;

(d)   Vendors and employees of vendors engaged on the Project Site in repair, testing, inspection, delivery, training, warranty work, or engaged in corrections of defective equipment or material;

(e)   Employees engaged in geophysical testing or other investigatory work (whether land or water);

(f)   Employees engaged in NDA testing. A list of NETA testing contractors will be attached to this Agreement as Attachment C. EPC and/or other owners (as may be determined by EPC exclusively) can select any of these contractors to use for NETA testing

CSI 0024

in conjunction with commissioning the Project. EPC and/or the Owner shall have the exclusive right of selecting any contractor on the list attached for such testing and the Union shall have no objection to that selection.

    (g)    Employees performing preconstruction site preparation work including fence installation, cleaning, grubbing, grading, compaction, or dust control/watering;

    (h)    Employees engaged in ancillary work on the Project which is performed by third parties, such as electric utilities, gas utilities, telephone companies, and railroads, or any other work not constituting Covered Work;

    (i)    Employees engaged in the delivery and unloading of material, supplies and equipment to the Project Site or to locations designated throughout the Project Site for equipment and material staging, as determined by the Owner or Employer;

    (j)    Employees of any governmental authority (state, local or otherwise) or employees of any contractor of such governmental authority; and

    (k)    Employees and contractors of lenders engaged in work on the Project Site as part of the lenders' due diligence or monitoring, which work is ancillary to Project work.

    2.2.   Commissioning and Startup. The manual and physical work typically performed by the Union as part of startup and commissioning is Covered Work. It is understood that the Owner, EPC (including temporary employees under EPC's direction performing non-manual functions that have been hired by EPC directly or through an agency), manufacturer's representatives, vendor's representatives, and plant operating personnel may supervise and direct start-up and commissioning activity, and that craft work is typically performed as part of a joint effort with these representatives and personnel.

    2.3.   Upon turnover acceptance of a portion of the Project by the Owner, such portion of the Project shall no longer be subject to the terms of this Agreement and any work done on such portion shall not be Covered Work. In the event that the Owner is not willing to accept the Project until substantial completion of the entire Project is reached, EPC will issue to the Union notice in writing of the completion of a section of the Project and the issuance of this letter to the Union will constitute the end of the terms and conditions of this Agreement and any work done on such portion after the issuance of this letter shall not be Covered Work.

CSI 0025

## 3. SUBCONTRACTING

3.1.   EPC and each Employer agree that they will contract for the assignment, awarding or subcontracting of Covered Work, or authorize another party to assign, award or subcontract Covered Work, only to a person, firm, corporation or other entity that, at the time the contract is executed, has become a party to this Agreement by executing the Agreement To Be Bound.

3.2.   EPC and each Employer agree that they will subcontract Covered Work only to a person, firm, or corporation who is or becomes signatory to this Work Site Agreement and who is or becomes signatory to the Union's Master Agreement for any non-residential solar work.  The subcontractor agrees to become a signatory of the Master Agreement under this provision only for the life of the current Master Agreement.  Any Employer performing Covered Work on the Project shall, as a condition to working on the Project, become signatory to and perform all work under the terms of this Agreement and the Master Agreement.  Before being authorized to perform any Covered Work, Employers (other than Primary Employer) shall become a party to this Agreement by signing an Agreement To Be Bound, which is provided as Attachment A to this Agreement.  Every Employer shall notify the Unions in writing within three business days after it has subcontracted work, and shall at the same time provide to the Unions a copy of an Agreement To Be Bound executed by the Employer.

3.3.   Nothing in this Agreement shall in any manner whatsoever limit the rights of EPC, or any other Employer, to subcontract work or to select its contractors or subcontractors, provided, however, that all Employers, at all tiers, performing Covered Work shall be required to comply with the provisions of this Agreement.  EPC and every other Employer shall notify each of its contractors and subcontractors of the provisions of this Agreement and require as a condition precedent to the award of any construction contract or subcontract for Covered Work or allowing any subcontracted Covered Work to be performed, that all such contractors and subcontractors at all tiers become signatory to this Agreement and the Master Agreement for non-residential solar work.  If any Employer fails to provide the Union with the Agreement To Be Bound executed by its subcontractor, that Employer shall be liable for any contributions to any trust funds that the subcontractor, or any subcontractor to that subcontractor, fails to make.

## 4. WAGES AND BENEFITS

4.1.   All employees covered by this Agreement (including foremen and general foremen if they are covered by the Master Agreement) shall be classified and paid wages, and contributions made on their behalf to multi-employer trust funds, all in accordance with the Master Agreement.  The parties agree that Master Agreement reflects the current wage determinations pursuant to the Davis-Bacon

CSI 0026

Act for the covered classifications however should the Master Agreement rates of pay exceed the wage determinations under Davis-Bacon, the wage determination under Davis-Bacon shall apply and the Master Agreement wage rates shall not apply.

The Davis Bacon/DOL wage determination that is included with the bid specifications for the Project on the date the bidding process is opened will remain in effect for the duration of the Project unless:

*(handwritten note in left margin: "Be Careful of what you wish for")*

A.     a wage modification is published after requests for bids are issued but no less than 10 days prior to the opening of bids, or,

B.     a wage modification is published after requests for bids are issued but less than 10 days before the opening of bids and there is a reasonable time to notify bidders of the modification before the opening of bids.

5.  UNION RECOGNITION AND REFERRAL

5.1.   The Employers recognize the Union signatory to this Agreement as the sole and exclusive collective bargaining agent for its construction craft employees performing Covered Work for the Project, and further recognize the traditional and customary craft jurisdiction of the Union.

5.2.   All employees performing Covered Work shall be or shall become and then remain members in good standing of the Union as a condition of employment on or before the eighth (8th) day of employment, or the eighth (8th) day following the execution of this Agreement, whichever is later.

5.3.   The Union shall be the source of all craft employees for Covered Work for the Project.  Employers agree to be bound by the hiring and layoff practices of the Union, including hiring of apprentices, and to utilize its registration facilities and referral systems.  Notwithstanding this provision, EPC and the Employers shall have the right to determine the competency of all referrals; determine the number of employees required; determine the selection of employees to be laid-off and reject any applicant referred by the Union.

5.4.   The Union will exert its utmost efforts to recruit sufficient numbers of skilled and qualified craft employees to fulfill the requirements of each Employer.  The Union and the Employers agree that they will not discriminate against any employee or applicant for employment because of race, color, religion, sex, sexual orientation, national origin, disability, age, pregnancy, any genetic information or any other protected classification protected by law or regulation.  Each Employer, EPC and the Union agree that they will not require any employee or applicant to submit to genetic testing or non-job related medical inquiries.

CSI 0027

5.5.   First Solar has always stressed the importance of local hiring on any construction project. Local hiring brings a sense of community to the initiative and supports the local economy in which it is doing business. In continuance of that initiative, the parties agree that hiring will be from the Union's Imperial Valley book.

5.6.   In the event the referral facilities maintained by the Union do not refer the employees as requested by the Employer within a forty eight (48) hour period after such requisition is made by the Employer (Saturdays, Sundays and Holidays excepted), the Employer may employ applicants from any source.

5.7.   While working within the journeymen/apprentice ratios contained in the Master Agreement, the Union agrees it will work with the Employer to most cost effectively assign entry level apprentices to the PV module cartridge work to support the blended rate (or lower rate) sought by the EPC while more senior level apprentices will be assigned to other responsibilities beyond module installation. To that end, the Union agrees that on this Project (which is presumed to be a Davis Bacon project) that the work of module installation/cartridge installation noted in Section 2.1 above will be performed by either first or second period apprentices for cost effectiveness.

5.8.   This Agreement is premised on the Project being subject to the Davis Bacon Act and related legislation ("Davis Bacon") by virtue of loan guarantees to be awarded under a U.S. Department of Energy loan guarantee program. Should EPC determine that such loan guarantees will not apply to the Project, the EPC may utilize the Construction Wireman Level 1 or 2 classification provided in Attachment D for the handling of photovoltaic panels or panel cartridges described in Section 2.1.



5.9.   In the event that the Project is not subject to Davis Bacon, the EPC and the Union agree to work together to maximize the availability of entry level apprentices for work downstream of PV module cartridge installation, subject to ensuring safe work practices and adequate supervision. If there are insufficient apprentices available, the EPC may utilize the Construction Wireman classifications with the consent of the Union.

6.  STRIKES AND LOCKOUTS

6.1.   During the term of this Agreement, the Union, agrees that it shall not (and that it shall not cause its agents, representatives and employees) to incite, encourage, condone or participate in any strike, walkout, slowdown, sit-down, stay-in, boycott, sympathy strike, picketing or other work stoppage for any cause whatsoever with respect to this Project; and it is expressly agreed that any such action is in violation of this Agreement. In the event of a violation of this provision,

CSI 0028

any Employer shall be entitled to seek relief in court, specifically including injunctive relief, to restrain any such action on the part of the Unions, and/or any of their agents, representatives or employees, in addition to the Liquidated Damages for violation of Section 1.5 and/or 6.1 of this Agreement.

6.2.   Upon written notice of a violation to the Union and its' officers, and their agents, representatives, employees and persons acting in concert with it, the Union shall take immediate action and will use its best efforts to prevent, end or avert any such activity or the threat thereof by any of its officers, members, representatives or employees, either individually or collectively, including but not limited to, publicly disavowing any such action and ordering all such officers, representatives, employees or members who participate in such unauthorized activity to cease and desist from same immediately and to return to work and comply with its orders. Nothing in this Agreement shall be construed to limit or restrict the right of any of the parties to this Agreement to pursue fully any and all remedies available under law in the event of a violation of this Article 6.

6.3.   The parties agree that to the extent the Master Agreement provisions of the Union's current labor agreement apply to this Project, they shall continue to apply throughout the duration of this Project notwithstanding the expiration of that agreement for all affected Employers on this Project.

6.4.   Neither EPC nor any other Employer shall incite, encourage or participate in any lockout or cause to be locked out any employee covered under the provisions of this Agreement. The term "lockout" does not refer to the discharge, termination or layoff of employees by any Employer for any reasons in the exercise of its rights as set forth in any provision of this Agreement, nor does "lockout" include a decision by EPC or any Employer to terminate or suspend work on the Project Site or any portion thereof for any reason other than a labor dispute.

6.5.   Notwithstanding the provisions of Section 6.1, it is agreed that the Union retains the right to withhold the services of its members from a particular Employer who fails to make timely payments to the Union's benefit plans, or fails to timely pay its weekly payroll, in accordance with the Master Agreement; provided, in the event the Union or any of its members withholds their services from such Employer, EPC or the applicable Employer shall have the right to replace such Employer with any other Employer who executes the Agreement To Be Bound. The Union shall not withhold the services of its members under this provision without first giving EPC and the individual Employer alleged to be delinquent in its payments at least five (5) business days' notice, in the case of payroll delinquencies, and ten (10) business days' notice, in the case of benefit fund delinquencies, and an opportunity to cure the delinquency by tendering payment to the relevant employees or trust funds.

CSI 0029

## 7. GRIEVANCE PROCEDURE

7.1.   It is mutually agreed that any question arising out of and during the term of this Agreement involving interpretation and application of this Agreement shall be considered a grievance.  Any grievances involving interpretation and application of this Agreement will be governed by this Agreement's grievance procedure as set forth below.  Any grievances involving interpretation and application of the Master Agreement will be governed by the Master Agreement's grievance procedure.

7.2.   EPC and any Employer, as well as the Union, may bring forth grievances under this Article.

7.3.   A grievance shall be considered null and void if not brought to the attention of the Employer(s) within five (5) working days after the incident that initiated the alleged grievance occurred or was discovered, whichever is later.  The term "working days" as used in this Article shall exclude Saturdays, Sundays or holidays regardless of whether any work is actually performed on such days.

7.4.   Grievances shall be settled according to the following procedure, except that grievances that do not involve an individual grievant shall be discussed by EPC  and the Union, and then, if not resolved within five (5) working days of written notice unless extended by mutual consent, commence at Step 4:

7.5.   Step 1.  The steward and the grievant shall attempt to resolve the grievance with the Employer's supervisor within five (5) working days after the grievance has been brought to the attention of the Employer.

7.6.   Step 2.  In the event the matter remains unresolved in Step 1 above after five (5) working days, within five (5) working days after notice to the Union, the alleged grievance, in writing, may then be referred to the Business Manager of the Union and the Labor Relations representative of the Employer for discussion and resolution.  A copy of the written grievance shall also be mailed/e-mailed to EPC.

7.7.   Step 3.  In the event the matter remains unresolved in Step 2 above after five (5) working days, within five (5) working days, the alleged grievance, in writing, may then be referred to the Business Manager of the Union and the Manager of Labor Relations of the Contractor or the Manager's designated representative and EPC as for discussion and resolution.

7.8.   Step 4.  If the grievance is not settled in Step 3 within five (5) working days, within five (5) days thereafter, either party may request the dispute be submitted to arbitration or the time may be extended by mutual consent of both

CSI 0030

parties. The request for arbitration and/or the request for an extension of time must be in writing with a copy to EPC. Should the parties be unable to mutually agree on the selection of an arbitrator, selection for that given arbitration shall be made by seeking a list of seven (7) labor arbitrators with construction experience from the Federal Mediation and Conciliation Service and alternately striking names from the list of names on the list until the parties agree on an Arbitrator or until one name remains. The first party to strike a name from the list shall alternate between the party bringing forth the grievance and the party defending the grievance. EPC shall keep a record of the sequence and shall notify the parties to the grievance as to which party has the right to strike a name first.

7.9.   The selected arbitrator ("Arbitrator") shall conduct a hearing at which the parties to the grievance shall be entitled to present testimonial and documentary evidence. Hearings will be transcribed by a certified court reporter. The parties shall be entitled to file written briefs after the close of the hearing and receipt of the transcript.

7.10.  Upon expiration of the time for the parties to file briefs, the Arbitrator shall issue a written decision that will be served on all parties and on EPC. The Arbitrator shall have the authority to utilize any equitable or legal remedy to prevent and/or cure any breach or threatened breach of this Agreement. The Arbitrator's decision shall be final and binding as to all parties signatory to this Agreement. No arbitration decision or award under this Article may provide retroactive relief of any kind exceeding fifteen (15) calendar days prior to the date the grievance was first initiated at Step 1.

7.11.  The cost of the Arbitrator and the court reporter, and any cost to pay for facilities for the hearing, shall be borne equally by the parties to the grievance. All other costs and expenses in connection with the grievance hearing shall be borne by the party who incurs them.

7.12.  The Arbitrator's decision shall be confined to the issue(s) posed by the grievance and the Arbitrator shall not have the authority to modify, amend, alter, add to or subtract from any provision of this Agreement.

7.13.  Any party to a grievance may invite EPC to participate in resolution of a grievance. EPC may, at its own initiative, participate in Steps 1 through 3 of the grievance procedure.

7.14.  In determining whether the time limits of Steps 2 through 4 of the grievance procedure have been met, a written referral or request shall be considered timely if it is personally delivered, sent by overnight mail or e-mailed within the five (5) working day period. Any of the time periods set forth in this Article may be extended in writing by mutual consent of the parties to the grievance, and any

CSI 0031

written referral or request shall be considered timely if it is personally delivered, sent by overnight mail or e-mailed during the extended time period.

7.15. For purposes of e-mailed copies of grievances to EPC, they can be sent to the following e-mail address: cbueter@firstsolar.com.

8. MANAGEMENT RIGHTS

8.1. Except as expressly limited by the specific provisions of this Agreement, the Employers retain full and exclusive authority for the management of their Project operations including, but not limited to: the right to direct the work force, including determination as to the number to be hired and the qualifications therefore; the number assigned to any specific work, the promotion, transfer, layoff of employees; the discipline or discharge of employees; the type of equipment to be used, the assignment and schedule of work; the promulgation of reasonable Project work rules; safety rules, drug and alcohol policies pursuant to Section 10.8 and the requirement, timing and number of employees to be utilized for Covered Work. Except as provided in the Master Agreement, no rules, customs, or practices which limit or restrict productivity or efficiency of the individual, and/or joint working efforts with other employees shall be permitted or observed. The foregoing enumeration of management rights shall not be deemed to exclude other functions not specifically covered by this Agreement.

8.2. There shall be no limitations or restriction upon EPC's choice of materials, techniques, methods, technology or design, or, regardless of source (including but not limited to country source of origin) or location, upon the use and installation of equipment, machinery, package units, pre-cast, pre-fabricated, pre-finished, or pre-assembled materials of any kind, tools, or other labor-saving devices. The Union agrees that such material and equipment is to be installed without incident.

8.3. In recognition of the dynamic nature of the PV solar industry, the parties agree that EPC may apply new technologies to the Project as they are developed, (including technological advances in the construction of PV solar plants) even if such application results in a reduction of the amount of labor on the Project.

8.4. All construction equipment assigned by an Employer to the Project shall be under the control of EPC. EPC shall have the right to determine how many pieces of construction equipment an individual shall operate.

9. SUCCESSORSHIP AND SURVIVABILITY

9.1. The subcontracting obligations described in Article 3 are independent obligations of EPC which shall survive any full or partial termination of EPC's

11

CSI 0032

involvement in the Project for any reason, including, without limitation: (i) any full or partial termination or transfer of EPC's right to control and coordinate construction work on the Project; (ii) any full or partial termination or transfer of a contract, if any, between EPC and any Owner for any Covered Work; (iii) the transfer of all or any portion of the Project or any interest in the Project by any Owner; or (iv) any other event that results in the replacement of EPC with another contractor.

9.2.   The parties agree that: (i) if EPC's involvement in the Project is terminated and (ii) Covered Work is performed by a contractor or subcontractor that is not in compliance with the provisions of Article 3, then EPC shall pay liquidated damages, as set forth on Attachment B.

9.3.   Upon execution and delivery of an agreement assuming all the obligations of this Agreement and determination by the Unions that the successor is financially responsible, EPC shall be released from liability for the payment of liquidated damages under this Article 9 and shall have no liability for any breach of this Agreement by a successor employer or contractor. A successor shall be considered financially responsible if the Unions, in the exercise of its' reasonable judgment, determine that the successor is financially capable of completing the Project and complying with the obligations and undertakings of EPC under this Agreement, including any obligation to pay liquidated damages under this Article 9.

9.4.   This Article shall be enforceable in any court of competent jurisdiction, and shall not be subject to the grievance procedure.

## 10. GENERAL PROVISIONS

10.1. If any article or provision of this Agreement shall be declared invalid, inoperative, or unenforceable by any competent authority of the executive legislative, judicial or administrative branch of the federal or state government, the Employers and the Union shall suspend the operation of such article or provisions during the period of its invalidity and shall substitute by mutual consent, in its place and stead, an article or provision which will satisfy the objections to its validity and which, to the greatest extent possible, will be in accord with the intent and purpose of the article or provision in question.

10.2. If any article or provision of this Agreement shall be held invalid, inoperative or unenforceable by operation of law, or by any of the above mentioned tribunals of competent jurisdiction, the remainder of the Agreement or application of such article or provision to persons or circumstances other than to which it has been held invalid, inoperative or unenforceable shall not be affected thereby.

CSI 0033

10.3. The parties agree that the 2009-2012 Inside Wireman's Master Agreement covering San Luis Obispo County shall apply in all instances where the Master Agreement is referred to or applies notwithstanding any subsequent changed terms that may result from the Master Agreement being renegotiated between Local 639 and NECA.

10.4. The provisions of this Agreement shall take precedence over conflicting provisions of the Master Agreement of the Union. The parties agree that the following provisions of the Master Agreement shall not apply to this Worksite Agreement. All other terms and conditions of employment described in the applicable Master Agreement shall apply if not denoted below.

- Section 1.03 – Changed Terms

- Section 1.05 – LMC

- Section 1.07 – LMC Decisions

- Section 1.08 – CIR

- Section 2.05 – Surety

- Section 2.23 – Work Refusal

- Section 3.16 – Previously addressed in our SOW definition.

- Section 3.19 – Travel – Compensation for travel will be paid as required by Davis Bacon and any other provisions of law.

The Company is currently working with the county officials to modify the transportation requirements found in MM TR-1.1. Should First Solar be successful is securing such modification so that busing becomes voluntary rather than mandatory, the Union will work aggressively with the Company notwithstanding the voluntary nature of the transportation (if modified), to strongly encourage all workers to make use of the free transportation provided to the job site in order to limit the traffic and pollution in the area of the project as well as help ensure the safety of each worker getting to the job site.

In the event that the Project does not receive DOE Loan Guarantees, the parties agree that notwithstanding the provisions of the Master Agreement or the busing issue noted above, travel pay (if required) will be paid at either 1) the wage determination level that existed when the bids for that block were let; or, 2) the Master Agreement level as noted in Section 3.19, whichever is less on a per hour basis for the contractor.

CSI 0034

- 3.23 – Tunnels

- 3.24 – Off-Shores Work

- Section 4.14(a) – Add the following sentence, "Should the Business Manager be unable to provide the needed qualified labor to the Employer within one week of the request, EPC may intervene by bringing in its own contractors to perform the work in question until such time as the Business Manager can provide the qualified help to the Employer. Any contractors brought in by EPC under these circumstances need not become signatories to the applicable Master Agreement.

- Section 5.12 – Modify to read as follows – "The job site shall be allowed a ratio of two (2) apprentices for every one (1) journeyman for work downstream of module/cartridge installation if the project does not qualify as a Davis Bacon project. If the project does qualify as a Davis Bacon project, the apprentice provisions noted in Section 5.7 above shall apply for apprentice use at and beyond the module/cartridge installation step.

- Relative to the Market Advancement Memo, the following provisions shall not apply:

  o   Scope of Work and Appendix "A"

10.5. The parties agree that all covered employees will be required to be at his or her work station and ready to begin work at the designated starting times. The parties support a pay arrangement that provides for the covered employee to be at his or her work station and ready to work at the start of this shift without compensation for the time traveled to his or her workstation however the parties further agree that employees will be compensated at the regular hourly rate of pay for travel time back to their vehicles from the workstation.

10.6. Each person executing this Agreement represents and warrants that he or she is authorized to execute this Agreement on behalf of the party or parties indicated.

10.7. Rights of Owner. Nothing in this Agreement shall be construed as limiting the Owner, in its sole discretion at any time to terminate, delay, cease, or suspend construction activities, in whole or part, on this Project and/or shut down the Project Site or any part thereof for reason other than a labor dispute.

10.8. This Agreement may be executed in counterparts.

CSI 0035

10.9. The parties recognize that First Solar strongly supports a drug free work environment on each of its projects. To that end, the parties agree that First Solar drug testing policies shall be applied to the Project by each Employer on the site. Specifically, that policy includes pre-employment drug testing prior to starting work on the site, random drug testing on the worksite once employed and drug testing following any industrial accident resulting in an injury or any damage to Employer or EPC property. Should First Solar require a pre-employment drug test of the employee(s) of the signatory Employer as noted above, and the employee(s) (through the signatory Employer) will be paid two (2) hours show up pay if he successfully passes the pre-employment drug test. This pay provision shall only apply to pre-employment drug tests.

10.10. Any notices required under this Agreement shall be given as follows. Either party may notify the other in writing if its person designated to receive notice is changed.

To EPC:

Lou Moore, VP Construction
First Solar Electric, LLC
350 West Washington Street
Suite 600
Tempe, AZ 85281
Telephone: (602) 414-9341

To the Unions:

Mark Simonin, Business Manager
IBEW Local 639

6363 Edna Road
San Luis Obispo CA 93401
Telephone: (805) 543-5693 x14

With a copy to:

Michael Jaffe
First Solar Electric LLC
400 Somerset Corporate Blvd.
Suite 501
Bridgewater, NJ 08807
Telephone: 908-809-4076
Fax: 908-809-4020

With a copy to:

Marc D. Joseph
Adams Broadwell Joseph & Cardozo
601 Gateway Boulevard, Suite 1000
South San Francisco, CA 94080
Telephone: 650-589-1660
Fax: (650) 589-5062

## 11. TERM OF AGREEMENT

11.1. The term of this Agreement shall commence on the date an agreement is executed between EPC and Owner for the Project regarding this Project as identified in Section 1.2; and shall continue in effect until completion of all Covered Work pursuant to Article 2.

CSI 0036

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and effective as of June 2, 2011.

FIRST SOLAR ELECTRIC            IBEW LOCAL 639
(CALIFORNIA) INC.

By: Lou Moore                   By:  Mark Simonin
     VP, Construction                Business Manager

2170-015v                    16

CSI 0037

ATTACHMENT A
AGREEMENT TO BE BOUND

WORK SITE AGREEMENT
TOPAZ SOLAR FARM PROJECT

The undersigned hereby certifies and agrees that:

1.)     It is an Employer as that term is defined in Section 1.4 of the TOPAZ SOLAR FARM PROJECT Work Site Agreement ("Agreement") because it has been, or will be, awarded a contract or subcontract to assign, award or subcontract Covered Work on the Project (as defined in Sections 1.2 and Article 2 of the Agreement), or to authorize another party to assign, award or subcontract Covered Work, or to perform Covered Work.

2.)     In consideration of the award of such contract or subcontract, and in further consideration of the promises made in the Agreement and all attachments thereto (a copy of which was received and is hereby acknowledged), it accepts and agrees to be bound by the terms and conditions of the Agreement, together with any and all amendments and supplements now existing or which are later made thereto.

3.)     If it performs Covered Work, it will be bound by the legally established trust agreements designated in local master collective bargaining agreements, and hereby authorizes the parties to such local trust agreements to appoint trustees and successor trustee to administer the trust funds, and hereby ratifies and accepts the trustees so appointed as if made by the undersigned.

4.)     It has no commitments or agreements that would preclude its full and complete compliance with the terms and conditions of the Agreement.

5.)     It will secure a duly executed Agreement To Be Bound, in form identical to this document, from any Employer(s) at any tier or tiers with which it contracts to assign, award, or subcontract Covered Work, or to authorize another party to assign, award or subcontract Covered Work, or to perform Covered Work.

DATED: _____     Name of Employer _____

_____
(Authorized Officer & Title)

_____

_____
(Address)

_____

2170-015v                              A-1

CSI 0038

ATTACHMENT B
SCHEDULE OF LIQUIDATED DAMAGES FOR BOTH PARTIES

WORK SITE AGREEMENT
TOPAZ SOLAR FARM PROJECT

1.      Strikes:  In the event the Union violates the terms of Section 6.1 of the Work Site Agreement, including without limitation, by interfering with the Project or by supporting a strike at the work site, then the Union shall be jointly and severally liable for an amount equal to ten thousand dollars ($10,000) for each day in which the Union is in violation of the terms of Sections 1.5 and/or 6.1.

2.      Failure of Successor to Assume.  In the event EPC fails to cause its successor to assume the Work Site Agreement,

EPC shall pay $30.00 for each hour that work was performed on the Project within the scope of this Agreement by employees of contractors or subcontractors who are not signatory to this Agreement as follows:

Fifteen Dollars ($15.00) per hour to the qualified pension plan and
Fifteen Dollars ($15.00) per hour to the qualified health and welfare plan

of the Union performed by the contractor(s) or subcontractor(s) not signatory to this Agreement.  The parties agree that the Union shall enforce, collect and receive the liquidated damages described herein on behalf of its qualified pension plan and its qualified health and welfare plan.  The qualified pension plans and the qualified health and welfare plans shall have no right to independently enforce the provisions of this Agreement.

3.      The liability of the Owner, EPC, any Employer and/or the Union under this Agreement shall be several and not joint.  Neither the Owner, nor any Contractor shall be liable for any violations of this Agreement by any other Contractor or party; and the Union shall not be liable for any violations of this Agreement by any other Union or party.

2170-015v                          B-1

CSI 0039

ATTACHMENT C
NETA Contractors

1. Hampton Tedder Technical Services -- California-Nevada-Arizona-New Mexico
2. Potomac Testing -- California-Nevada-Arizona-New Mexico
3. Electrical Testing Inc -- Georgia
4. Industrial Electrical Testing -- Florida
5. Electrical Experts Energy Inc -- Wisconsin
6. Halco -- California
7. AEC Applied Engineering Concepts -- California
8. Magna Industries -- California
9. Power Systems -- California

2170-015v

C-1

CSI 0040

ATTACHMENT D
IBEW, Ninth District
Market Advancement
Memo of Understanding

2170-015v

D-1

CSI 0041

# IBEW, NINTH DISTRICT
# MARKET ADVANCEMENT
# MEMORANDUM OF UNDERSTANDING

### Between

### The International Brotherhood of Electrical Workers,

### &

### National Electrical Contractors Association

IBEW Local Unions: 234 (from Chualar to Big Sur & South), 639, 413, and 952, and the NECA Chapters of Monterey Bay, Central California Coast, and Ventura Division, Los Angeles, hereby agree to the following terms and conditions, which shall apply to the IBEW/NECA Inside construction agreements for the geographical jurisdictions of the aforementioned Local Unions, exclusively for the scope of work detailed herein. The geographical area addressed by this Memorandum of Understanding shall be referred to as the California Central Coast Region.

The purpose of this Memorandum of Understanding is to advance the IBEW/NECA market share by organizing the electrical work and workforce in the identified industry sectors. Furthermore, the new classifications incorporated herein are not intended to exclude or replace Journeyman Wiremen or Apprentices, but are designed to complement existing classifications and create competitive crew compositions which thereby generate new employment opportunities for Journeyman and Apprentices, and provide a mechanism for the IBEW to represent workers heretofore not represented.

An employer utilizing this Memorandum of Understanding must be signatory to the Inside Agreement of the Local Union where the work is being performed. All terms and conditions not specifically addressed herein shall be handled in accordance with the

1

CSI 0042

appropriate Inside Agreement. Any question or dispute concerning an interpretation of this Memorandum of Understanding shall be determined by the IBEW Ninth District International Vice President and the National Electrical Contractors Association Western Region Director.

## EFFECTIVE DATE

This Memorandum of Understanding shall take effect immediately and remain in effect until May 31, 2013. It shall continue in effect from year to year thereafter, from June 1 through May 31 of each year, unless changed or terminated, as provided herein. This Memorandum of Understanding may be terminated, by either party, with respect to a specific geographical jurisdictional, by providing written notification to the related signatory parties at least 90 days prior to the anniversary date of this MOU.

## SCOPE OF WORK

The following types of work are covered by this Memorandum of Understanding:

- Scope is to be determined Region by Region and attached to this MOU as Appendix A.

The following types of work shall be excluded from the scope of this Memorandum of Understanding:

- Public works requiring the payment of prevailing wages,
- Work covered by Project Labor Agreements or funded/financed by union trust funds,
- Work defined within the scope of other IBEW/NECA agreements other than the Inside Agreement (i.e., sound & communications, residential, photovoltaic, etc), and specific customers' work presently/historically performed by signatory employers under the Inside Agreement, and;

2

CSI 0043

■ Any and all other work not specifically included in the Scope of this MOU.

## CHANGES, GRIEVANCES AND DISPUTES

Changes, grievances and disputes will be handled in the manner provided in the Local Union and NECA Chapter negotiated Inside Agreement with the following modifications:

Grievances and Disputes: The Labor-Management Committee of the site local union shall handle all grievances, with the exception of interpretations of this Memorandum of Understanding, which shall be determined by the Ninth District International Vice President and Western Region NECA Executive Director, as previously noted. Any complaint or grievance, except in the case of fringe benefit payments, which is not filed in writing within 15 working days of the grievant becoming aware of the complaint or grievance, shall be deemed to no longer exist. Any unresolved issues shall be submitted to CIR for adjudication as provided for in the Inside Agreement.

Changes:   There shall be a Labor-Management Committee established to handle changes to this Memorandum of Understanding named California Central Coast Region Labor-Management Committee, which shall consist of three (3) representing the Unions and three (3) representing the Chapters. It shall select its own Chairman and Secretary. The Local Unions shall select the Union representatives and the Chapters shall select the Management representatives. If the Local Unions or the Chapters are unable to agree on the designees, the respective appropriate parent organizations, IBEW Ninth District and Western Region NECA, shall make the selection on their behalf.

3

CSI 0044

Any matter involving changes to Appendix A, B and/or C will be handled by the California Central Coast Region LMC.

This Memorandum of Understanding shall only be subject to change or supplement by mutual consent of the respective appropriate parent organizations, IBEW Ninth District and Western Region NECA.

Either party, Labor or Management of the California Central Coast Region LMC, desiring to change Appendix A, B and/or C must provide written notification at least 90 days prior to the expiration date. The nature of the changes must be specified in the notice or no later than the first negotiating meeting unless mutually agreed otherwise. Any unresolved issues arising out of the failure of the parties to negotiate a modification to Appendix A, B and/or C shall be determined by the appropriate parent organizations, IBEW Ninth District and Western Region NECA.

## MANAGEMENT RIGHTS

Work performed by Construction Wiremen and Construction Electricians will be limited only by what the employer or the employer's field representative deem as appropriate and within the individual's qualifications to properly perform safely, in a workmanlike manner and within the specific scope of this Memorandum of Understanding. In this regard, Construction Wiremen may work alone if deemed qualified by the employer and permitted by State or local statute.

Nothing contained is this Memorandum of Understanding shall prevent an owner from doing electrical work.

4

CSI 0045

## PORTABILITY

An employer signatory to a Letter of Assent to an Inside Collective Bargaining Agreement, or signatory to an approved Inside Collective Bargaining Agreement with any local union signatory to this Memorandum of Understanding, will be entitled to unlimited Portability, with the exception of Indentured Apprentices, within a Region, for any work covered in the scope of this Memorandum of Understanding.  Additionally, portability of employees between Regions will be permitted in accordance with the national four man portability provisions and/or one man per job. However, if sufficient manpower is not available within a Region a reasonably adjusted portability allowance, up to and including full portability, may be utilized, subject to approval of the Business Manager where the work is being performed.

The employer shall notify the local union where the work is to be performed by fax or e-mail within 24 hours of starting a job, of the job address, approximate duration and estimated manpower at peak.  The employer shall also immediately remit a list of all employees transferred under Portability, to the site Local Union.  The list shall include names, classifications, social security numbers, and their job site location.

(1) Within each Region, all fringe benefits and remittances shall be made through a single transmittal for each Region.

(2) Working assessments and apprenticeship contributions shall be determined Region by Region and specified in Appendix B and shall be paid to the Local Union where the work is being performed.

(3) All worker classifications working under the Scope of this MOU shall be included under the Portability rules, with the exception of indentured apprentices, who shall continue to be handled in accordance with the JATC Standards.

5

CSI 0046

JW's may be transferred back and forth between work covered by the Inside Agreement and this Memorandum of Understanding.  CW's and CE's can only work on projects covered by this Memorandum of Understanding.

Reverse Book Lay-Off shall not apply to workers covered by this Memorandum of Understanding.

## WAGES AND BENEFITS

Wages and Benefits shall be determined Region by Region and attached to this Memorandum of Understanding as Appendix B.

Wage/Benefit increases in years 2 and 3 shall be determined Region by Region. There will be a 1,000 hour probationary period for Construction Wiremen/Construction Electricians to determine if they have been assigned the proper classification level in the program.

The ratio of certified electricians to apprentices and CW's shall not exceed that allowed by State Law.

## TRAINING

The Local JATC shall be responsible for all training of Construction Wiremen and Construction Electricians.

Nothing in this Memorandum of Understanding is intended to undermine the authority of the Local Union Examining Board as established by the IBEW Constitution, the Local Union Bylaws and Ninth District Policy.

CSI 0047

# APPENDIX "A"

## Market Advancement Scope of Work

## Covered by This Memorandum of Understanding

### For California Central Coast Region

Under this MOU, the Scope of Work shall be limited to the following <u>privately funded projects.</u>

1. Fast Food Stores
2. Restaurants
3. Strip Malls
4. Large Retail
5. Retail TI
6. High Volume Retail (Big Box Stores)
7. Medical/Dental Offices & Clinics
8. Tilt-ups and tenant improvements
9. Movie Theaters / Cineplex
10. Hotels and Motels
11. Mixed use low rise (below 4 stories)
12. Drug Stores / Pharmacies
13. Supermarkets / Grocery Stores
14. Self Storage
15. Churches

CSI 0048

CSI 0049

Appendix "B"
Construction Electrician/Construction Wireman
Wage and Fringe Benefits

**California Central Coast Region**

The minimum hourly rate of wages and benefits shall be as follows:

Inside Journeyman                    per the work site Local Inside CBA
Inside Journeyman Foreman            per the work site Local Inside CBA
Inside Journeyman General Foreman    per the work site Local Inside CBA
Inside Wireman Apprentice            per the work site Local Inside CBA

| CE/CW CLASSIFICATIONS | WAGE | HEALTH & WELFARE (refer to Appendix D) | NEBF (3% of wages) | NLMCC | TRA |
|---|---|---|---|---|---|
| Construction Electrician Level 2, (Lead/Foreman) | 28.60 | 4.00 | 0.86 | 0.01 | |
| Construction Electrician Level 2 (10,001 and above) | 26.00 | 4.00 | 0.78 | 0.01 | |
| Construction Electrician Level 1 (8,001 - 10,000 hrs) | 22.10 | 4.00 | 0.66 | 0.01 | |
| Construction Wireman Step 6 (7,001 - 8,000 hrs) | 19.50 | 4.00 | 0.59 | 0.01 | |
| Construction Wireman Step 5 (6,001 - 7,000 hrs) | 18.20 | 4.00 | 0.55 | 0.01 | |
| Construction Wireman Step 4 (5,001 - 6,000 hrs) | 16.90 | 4.00 | 0.51 | 0.01 | |
| Construction Wireman Step 3 (4,001 - 5,000 hrs) | 15.60 | 4.00 | 0.47 | 0.01 | |
| Construction Wireman Step 2 (3,001 - 4,000 hrs) | 14.30 | 0.00 | 0.43 | 0.01 | |
| Construction Wireman Step 1 (2,000 -3,000 hrs) | 13.00 | 0.00 | 0.39 | 0.01 | |

1. There will be a 2% wage increase for all classifications of CE/CW on 6/1/2011 and another 2% wage increase for all CE/CW cla
2. All trust contributions shall be paid on each hour as paid ie. 1 ½ x or 2x on overtime.
3. Apprenticeship contributions shall be paid to the Local Union where the work is being performed.
4. Working assessments will be 3% of the gross wages and shall be paid to the Local Union where the work is being performed.

10

CSI 0051

APPENDIX "C"

Market Advancement Hours/Working Conditions

For the California Central Coast Region

## Work Day/Work Week

Under this MOU, the work day shall be between the hours of 6:00 a.m. and 6:00 p.m. The work week shall be Monday through Friday.

## Shift Work

Under this MOU, when required by the customer to work a single shift outside of the defined work day, the shift shall be eight hours work for eight hours pay and there shall be no shift differential pay for CE or CW classifications. If there are multiple shifts, shift pay and hours worked shall be as per the local's Inside Agreement where the work is being preformed. At the expiration of this MOU, May 31, 2013, shift differential pay shall revert back to the terms of the Local Union's Inside Agreement where the work being preformed.

## Overtime Pay

Monday – Friday: 1 ½ times the straight time rate of pay after 8 hours, double time after 12 hours.

Saturday: 1 ½ times the straight time rate of pay, double time after 8 hours.

Sundays and Holidays: Double time.

## Foremen

Other than an Inside Wireman, only a Construction Electrician Level 2 with a valid CA State General Electrician Certification may be designated as a jobsite Lead/Foreman whose wage scale shall be that of Construction Electrician Level 2 plus 10%.

\* All other work day/work week conditions shall correspond with the terms of each Local Union's Inside Wireman's Agreement where the work is being preformed.

11

CSI 0052

APPENDIX "D"

(1)  The Employers shall make contributions to the NECA/IBEW Family Medical Care Trust Fund for all CE and CW employees.

(2)   The contributions required under this MOU for each employee shall be made, at the rates set by the Board of Trustees of the Fund.  Currently the rate for CE and CW employees for Plan 1 coverage is $4.00 per hour.  The rates set forth above shall be effective on the Effective Date.  These contributions shall be due on the fifteenth (15) day of the month following the month in which work is performed.  The Employer shall be bound to the Participation Agreement executed by the NECA Chapter with the Fund containing currently applicable contribution amounts for each time period in which a different contribution rate is utilized and these contribution rates shall be those required under of this MOU.

(3)  Employees described in paragraph 1 shall be eligible for family coverage under the NECA/IBEW Family Medical Care Trust Fund Plan 1.   Eligibility shall be determined under the provisions of the NECA/IBEW Family Medical Care Trust Fund Plan 1.   In addition, when the CE or CW employee attains Journeyman status and becomes eligible under the members' Inside Wireman Health & Welfare Fund, coverage will immediately cease under the NECA/IBEW Family Medical Care Trust Fund.

(4)  All Employers employing CE or CW employees are bound by the Participation Agreement between the NECA/IBEW Family Medical Care Trust Fund and NECA.  The NECA/IBEW  Family  Medical  Care  Trust  Fund  may  terminate  this  Participation Agreement at any time, in which case contributions may no longer be made to the NECA/IBEW Family Medical Care Trust Fund under this Agreement.   The NECA Chapter may terminate the Participation Agreement at any time after the longer of three

12

CSI 0053

years following the Effective Date of this Section or the expiration of this collective bargaining agreement by providing written notice to the NECA/IBEW Family Medical Care Trust Fund by certified mail received by the NECA/IBEW Family Medical Care Trust Fund more than 60 days prior to the first of the month for which contributions and payroll deductions would be due for employees under this Agreement absent the termination notice.  The Employer shall remain bound to the independent requirements to make contributions under the terms and in the amounts set forth in the then current Participation Agreement even if this collective bargaining agreement has expired.

(5)  The Employers adopt and agree to be bound by all the terms and provisions of the Agreement and Declarations of Trust and Plan creating the NECA/IBEW Family Medical Care Trust Fund as fully as if the Employers were original parties.  The Employers acknowledge receipt of these documents.  The Employers designates the Employer Trustees of the Fund as their representatives on the Fund.  The Employers agree to be bound by and to ratify all actions taken by the Trustees pursuant to the powers granted them under the Trust Agreements.

13

CSI 0054

## California Central Coast Region

Signed for the IBEW:                    Signed for NECA:

_____                    _____

IBEW, LU 234                            NECA, Monterey Bay Chapter

_____                    _____

IBEW, LU 639                            NECA, CA, Central Coast Chapter

_____                    _____

IBEW, LU 413                            NECA, CA, Central Coast Chapter

_____                    _____

IBEW, LU 952                            NECA, Ventura Division

                                        Los Angeles Chapter

CSI 0055

Exhibit F

1  Frank Cronin, Bar No. 069840
   Steve T. Graham, Bar No. 105710
2  Brian J. Mills, Bar No. 216078
   SNELL & WILMER L.L.P.
3  600 Anton Blvd, Suite 1400
   Costa Mesa, California 92626-7689
4  Telephone:   714.427.7000
   Facsimile:   714.427.7799
5
6  Attorneys for Defendant
   CSI Electrical Contractors, Inc.
7
8                SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                        COUNTY OF LOS ANGELES
10
11 JAMES PAYTON, an individual on behalf of    Case No. BC525050
   himself and others similarly situated,
12                                              **NOTICE TO ADVERSE PARTY OF**
                   Plaintiff,                   **REMOVAL TO FEDERAL COURT**
13
          v.
14
   CSI ELECTRICAL CONTRACTORS, INC., a          Date of filing: October 21, 2013
15 California corporation, and DOES 1 through
   100,                                         Trial date: No date set
16
                   Defendant.
17
18
19 TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:
20
21        PLEASE TAKE NOTICE that a Notice of Removal of this action was filed in the
22 United States District Court for the Central District of California on November 27, 2013.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

18309120

NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

1    A copy of the Notice of Removal is attached to this Notice and is served and filed

2    herewith

3

4    Dated: November 27, 2013                    SNELL & WILMER L.L.P.

5

6                                                By: _____

7                                                    Frank Cronin
                                                     Steve T. Graham
8                                                    Brian J. Mills

9    Attorneys for Defendant
     CSI Electrical Contractors, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-1989

18309120

- 2 -

NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

## PROOF OF SERVICE

*James Pyaton v. CSI Electrical Contractors, Inc.*
Los Angeles Superior Court, Case No. BC525050

    I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, CA  92626-7689.

    On November 27, 2013, I served, in the manner indicated below, the foregoing document described as **NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

*Please See Attached Service List*

☒    BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Costa Mesa, California, with postage thereon fully prepaid.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to  (C.C.P. § 1013(a)).

☐    BY FACSIMILE: (C.C.P. § 1013(e)(f)).

☐    BY FEDERAL EXPRESS:  I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. § 1013(c)(d)).

☐    BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the addressees. (C.C.P. § 1011(a)(b)).

☐    BY ELECTRONIC SERVICE: I caused such documents to be electronically served to all parties via LexisNexi File & Serve (C.C.P. §1010.6)

********

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on November 27, 2013, at Costa Mesa, California.

_____
Antonia Martin

**Snell & Wilmer**
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

PROOF OF SERVICE

18309834

## SERVICE LIST

*James Pyaton v. CSI Electrical Contractors, Inc.*
Los Angeles Superior Court, Case No. BC525050

Lonnie C. Blanchard, III                      Attorneys for Plaintiff
Jeffrey D. Holmes
The Blanchard Law Group, APC
3311 East Pico Boulevard                       Tel:        (213) 599-8255
Los Angeles, CA 90023                          Fax:        (213) 402-3949
                                               Email: lonnieblanchard@gmail.com

Peter R. Dion-Kindem                           Attorneys for Plaintiff
The Dion-Kindem Law Firm
Peter R. Dion-Kindem, P.C.
21550 Oxnard Street, Suite 900                 Tel:        (818) 883-4900
Woodland Hills, CA 91367                       Fax:        (818) 883-4902
                                               Email: peter@dion-kindemlaw.com

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

- 2 -

PROOF OF SERVICE

18309834

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, CA  92626-7689.

On November 27, 2013, I served, in the manner indicated below, the foregoing document described as **DEFENDANT CSI ELECTRICAL CONTRACTORS, INC.'S NOTICE OF REMOVAL OF ACTION** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

*Please see attached Service List*

☒   BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Costa Mesa, California, with postage thereon fully prepaid.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to  (C.C.P. § 1013(a)).

☐   BY FACSIMILE: (C.C.P. § 1013(e)(f)).

☐   BY FEDERAL EXPRESS:  I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. § 1013(c)(d)).

☐   BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the addressees. (C.C.P. § 1011(a)(b)).

********

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 27, 2013, at Costa Mesa, California.

Antonia Martin

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

8976069.1

PROOF OF SERVICE

1                              Service List

2

   Lonnie C. Blanchard, III              Attorneys for Plaintiff
3  Jeffrey D. Holmes
   The Blanchard Law Group, APC
4  3311 East Pico Boulevard              Tel:      (213) 599-8255
   Los Angeles, CA 90023                 Fax:      (213) 402-3949
5                                        Email:
                                                   lonnieblanchard@gmail.com
6

7  Peter R. Dion-Kindem                  Attorneys for Plaintiff
   The Dion-Kindem Law Firm
8  Peter R. Dion-Kindem, P.C.
   21550 Oxnard Street, Suite 900        Tel:      (818) 883-4900
9  Woodland Hills, CA 91367              Fax:      (818) 883-4902
                                         Email:    peter@dion-
10                                       kindemlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8976069.1

                              - 2 -
                                                   PROOF OF SERVICE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____John A. Kronstadt_____ and the assigned Magistrate Judge is _____Alicia G. Rosenberg_____ .

The case number on all documents filed with the Court should read as follows:

## CV13-08795 JAK (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____November 27, 2013_____
Date

By _____Lori Wagers_____
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] **Western Division**<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] **Eastern Division**<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

James Payton

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CSI Electrical Contractors, Inc.

**(b)** County of Residence of First Listed Plaintiff <u>San Luis Obispo</u>
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant <u>Los Angeles</u>
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

Lonnie C. Blanchard, III
Jeffrey D. Holmes
The Blanchard Law Group, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Tel: (213) 599-8255
Fax: (213) 402-3949

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

Frank Cronin (#69840); Steve T. Graham (#105710)
Brian Mills (#216078)
Snell & Wilmer L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California  92626-7689
Tel: (714) 427-7000
Fax: (714) 427-7799

| II. BASIS OF JURISDICTION (Place an X in one box only.) | | III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant) | | | | |
|---|---|---|---|---|---|---|
| | | | PTF | DEF | | PTF DEF |
| ☐ 1. U.S. Government Plaintiff | ☒ 3. Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 ☐ 4 |
| | | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 ☐ 5 |
| ☐ 2. U.S. Government Defendant | ☐ 4. Diversity (Indicate Citizenship of Parties in Item III) | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding  ☒ 2. Removed from State Court  ☐ 3. Remanded from Appellate Court  ☐ 4. Reinstated or Reopened  ☐ 5. Transferred from Another District (Specify):  ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ <u>Unspecified Amount</u>

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Federal Question Jurisdiction Under § 301 of the LMRA

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☒ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | | |
|---|---|---|---|
| | | CV13-08795 JAK (AGRx) | Page 1 of 3 |

CV-71 (11/13)                                    CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? ☒ Yes ☐ No  If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☒ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action?  ☐ Yes ☒ No  If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?**  Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**  Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN DIVISON |

American LegalNet, Inc.
www.FormsWorkFlow.com

IX(a). **IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

IX(b). **RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   _Frank Cronin_   DATE: November 27, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com

## PROOF OF SERVICE

1
2      I am employed in the County of Orange, State of California. I am over the
3  age of 18 and not a party to the within action; my business address is 600 Anton
   Boulevard, Suite 1400, Costa Mesa, CA  92626-7689.
4
5      On November 27, 2013, I served, in the manner indicated below, the
   foregoing document described as **CIVIL CASE COVER SHEET** on the interested
6  parties in this action by placing true copies thereof, enclosed in sealed envelopes, at
   Costa Mesa, addressed as follows:
7
8                          *Please see attached Service List*
9
10     ☒    BY REGULAR MAIL:  I caused such envelopes to be deposited in
               the United States mail at Costa Mesa, California, with postage thereon
11             fully prepaid.  I am readily familiar with the firm's practice of
12             collection and processing correspondence for mailing.  It is deposited
               with the United States Postal Service each day and that practice was
13             followed in the ordinary course of business for the service herein
               attested to  (C.C.P. § 1013(a)).
14
15     ☐    BY FACSIMILE: (C.C.P. § 1013(e)(f)).
16     ☐    BY FEDERAL EXPRESS:  I caused such envelopes to be delivered
               by air courier, with next day service, to the offices of the addressees.
17             (C.C.P. § 1013(c)(d)).
18
19     ☐    BY PERSONAL SERVICE:  I caused such envelopes to be delivered
               by hand to the offices of the addressees. (C.C.P. § 1011(a)(b)).
20                                   ********
21
22     I declare that I am employed in the office of a member of the bar of this court
   at whose direction the service was made.
23
       Executed on November 27, 2013, at Costa Mesa, California.
24
25
26     _____
       Antonia Martin
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

8976069.1                                                    PROOF OF SERVICE

Service List

| | |
|---|---|
| Lonnie C. Blanchard, III<br>Jeffrey D. Holmes<br>The Blanchard Law Group, APC<br>3311 East Pico Boulevard<br>Los Angeles, CA 90023 | Attorneys for Plaintiff<br><br>Tel:          (213) 599-8255<br>Fax:          (213) 402-3949<br>Email:<br>          lonnieblanchard@gmail.com |
| Peter R. Dion-Kindem<br>The Dion-Kindem Law Firm<br>Peter R. Dion-Kindem, P.C.<br>21550 Oxnard Street, Suite 900<br>Woodland Hills, CA 91367 | Attorneys for Plaintiff<br><br>Tel:          (818) 883-4900<br>Fax:          (818) 883-4902<br>Email:     peter@dion-<br>kindemlaw.com |

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

8976069.1

- 2 -

PROOF OF SERVICE